**UNDER SEAL**

**F I L E D**
CLERK, U.S. DISTRICT COURT

**JULY 8, 2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rrp. _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ARSEN ABRAHAMYAN and<br>ARMEN OGANESIAN,<br><br>        Defendants. | No. **2:20-cr-00274 JFW**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1014: False Statement to a Financial Institution; 18 U.S.C. § 1344(2): Bank Fraud and Attempted Bank Fraud; 18 U.S.C. § 1343: Wire Fraud Affecting a Financial Institution; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1014, 2(b)]

[ALL DEFENDANTS]

1.    On or about September 22, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARSEN ABRAHAMYAN and ARMEN OGANESIAN knowingly made, and willfully caused to be made, false statements to JPMorgan Chase Bank, N.A.

("Chase Bank"), an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, namely, that: (1) The sale of a duplex residential property in Los Angeles ("the Lakeview property") by defendant ABRAHAMYAN to defendant OGANESIAN was "'an Arm's Length Transaction,' meaning that the transaction had been negotiated by unrelated parties"; (2) "No Buyer or agent of Buyer(s) shares a business interest with the Seller(s) or the borrower(s) or the mortgagee(s)"; and (3) "There are no hidden terms or hidden agreements or special understandings between the Seller(s) and the Buyer(s) or among their respective agents which are not reflected in this Agreement," when in fact, as defendants ABRAHAMYAN and OGANESIAN then knew, (1) the purchase and sale of the Lakeview property was not an arm's length transaction; (2) defendants ABRAHAMYAN and OGANESIAN did share a business interest; and (3) there were hidden terms, hidden agreements, and special understandings between defendants ABRAHAMYAN and OGANESIAN that were not reflected in the written agreement between them.

1                    COUNTS TWO AND THREE

2                 [18 U.S.C. §§ 1344(2), 2(a), 2(b)]

3                         [ALL DEFENDANTS]

4  A.    SCHEME TO DEFRAUD

5       2.    Beginning on an unknown date no later than on or about

6  March 10, 2010, and continuing through at least on or about November

7  5, 2011, in Los Angeles County, within the Central District of

8  California, and elsewhere, defendants ARSEN ABRAHAMYAN and ARMEN

9  OGANESIAN, together with others known and unknown to the Grand Jury,

10 each aiding and abetting the others, knowingly and with intent to

11 defraud, executed and attempted to execute a scheme to obtain moneys,

12 funds, credits, assets, and other property owned by and in the

13 custody and control of Chase Bank, an institution the accounts of

14 which were insured by the Federal Deposit Insurance Corporation, by

15 means of material false and fraudulent pretenses, representations,

16 and promises, and the concealment of material facts.

17      3.    The fraudulent scheme was operated and was carried out, in

18 substance, in the following manner:

19           a.    Defendant ABRAHAMYAN would agree to sell the Lakeview

20 property to defendant OGANESIAN for less than the outstanding Chase

21 Bank mortgage debt on that property.

22           b.    To induce Chase Bank to agree to the "short sale" of

23 the Lakeview property for less than the outstanding mortgage debt on

24 that property held by Chase Bank, defendants ABRAHAMYAN and OGANESIAN

25 would sign Chase Bank form "Affidavit of Arm's Length Transaction,"

26 which contained many false statements.

27           c.    Defendant ABRAHAMYAN would obtain Chase Bank's

28 approval of the Lakeview property short sale using false statements.

                                3

d.　Defendant OGANESIAN would use proceeds from a tax fraud, wire fraud, and money laundering scheme to fund the purchase of the Lakeview property from defendant ABRAHAMYAN.

e.　Defendant ABRAHAMYAN would sell the Lakeview property to defendant OGANESIAN for $650,000 as a short sale, even though defendant ABRAHAMYAN owed Chase Bank more than $980,000 in outstanding mortgage debt.

f.　Defendant ABRAHAMYAN would transfer ownership of the Lakeview property to defendant OGANESIAN.

g.　Approximately one year after the sale of the Lakeview property from defendant ABRAHAMYAN to defendant OGANESIAN, defendant OGANESIAN would quit-claim transfer the Lakeview property to defendant ABRAHAMYAN's mother as a purported "gift."

B.　EXECUTION OF THE SCHEME TO DEFRAUD

4.　On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants ABRAHAMYAN and OGANESIAN, together with others known and unknown to the Grand Jury, each aiding and abetting the others, committed the following acts, and willfully caused others to commit the following acts, each of which constituted an execution and attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| TWO | 09/22/2010 | Signing Chase Bank's arm's length transaction affidavit for the purchase and sale of the Lakeview property |
| THREE | 10/12/2010 | Transferring ownership of the Lakeview property from defendant ABRAHAMYAN to defendant OGANESIAN, with Chase Bank's mortgage paid off as a short sale |

4

COUNTS FOUR THROUGH SIX

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

A.   SCHEME TO DEFRAUD

5.   Beginning on an unknown date no later than on or about March 10, 2010, and continuing through at least on or about October 12, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARSEN ABRAHAMYAN and ARMEN OGANESIAN, together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed and attempted to execute a scheme to defraud Chase Bank, an institution the accounts of which were insured by the Federal Deposit Insurance Corporation, as to material matters, and to obtain money and property from Chase Bank by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, with such scheme affecting a financial institution.

6.   The fraudulent scheme was operated and was carried out, in substance, as set forth in paragraph 3 of this Indictment, which is re-alleged here.

B.   USE OF THE WIRES

7.   On or about the following dates, within the Central District of California, and elsewhere, defendants ABRAHAMYAN and OGANESIAN, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ACT |
|-------|------|-----|
| FOUR | 08/05/2010 | FAX from defendants' real estate agent A.K. to Chase Bank |
| FIVE | 09/23/2010 | FAX from Chase Bank to defendants' real estate agent A.K. |
| SIX | 10/12/2010 | Fedwire payment of $597,036.50 to Chase Bank |

COUNT SEVEN

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

     8.   Beginning on a date unknown to the Grand Jury, and continuing through an unknown date no earlier than in or around May 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARSEN ABRAHAMYAN and ARMEN OGANESIAN knowingly conspired with others known and unknown to the Grand Jury:

          a.   To conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which in fact involved the proceeds of specified unlawful activity – namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344(2) – and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

          b.   To engage and attempt to engage in monetary transactions involving criminally derived property of a value greater than $10,000, affecting interstate and foreign commerce, which was derived from specified unlawful activity – namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344(2) – and knowing that the funds represented the proceeds of some form of

1  unlawful activity, in violation of Title 18, United States Code,

2  Section 1957.

3  B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

4        ACCOMPLISHED

5        9.    The objects of the conspiracy were to be accomplished, in

6  substance, as follows:

7              a.    Defendants ABRAHAMYAN and OGANESIAN would engage in

8  the means described in paragraphs 3.a. through 3.g.

9              b.    Defendants ABRAHAMYAN and OGANESIAN would use

10 nominees, bank accounts, and real estate transactions to launder

11 proceeds from a mail, wire, and tax fraud scheme where more than

12 $30,000,000 in tax refunds had been fraudulently obtained from the

13 U.S. Treasury from more than 7,000 false tax returns that had been

14 filed using stolen identities.

15             c.    Defendants ABRAHAMYAN and OGANESIAN would engage in

16 monetary transactions involving criminally derived property of a

17 value greater than $10,000, including purchasing and selling real

18 estate.

19             d.    To attempt to conceal and disguise the nature,

20 location, source, ownership, and control of the fraudulently obtained

21 proceeds:

22                  i. Defendants ABRAHAMYAN and OGANESIAN would use

23 third party nominees to purchase, fund, hold, lease, transfer, and

24 re-sell assets such as real estate.

25                  ii. Defendants ABRAHAMYAN and OGANESIAN would conceal

26 their involvement in the scheme.

27                  iii. Defendant ABRAHAMYAN would sell the Lakeview

28 property to defendant OGANESIAN.

1          iv. Defendants ABRAHAMYAN and OGANESIAN would fund

2     the purchase of the Lakeview property using funds from different bank

3     accounts held by nominees, including bank accounts containing

4     proceeds of wire, bank, and tax fraud.

5          v. Defendant OGANESIAN would transfer ownership of

6     the Lakeview property to defendant ABRAHAMYAN's mother.

7          vi. Defendant ABRAHAMYAN's mother would hold title to

8     the Lakeview property until it could be sold, all the while

9     concealing defendant ABRAHAMYAN's true control of that asset.

10          vii. Defendant ABRAHAMYAN would refer cases to

11    attorneys to attempt to unfreeze bank accounts containing proceeds of

12    wire, bank, and tax fraud, which the banks had frozen due to

13    suspected fraud.

14          viii. Defendant ABRAHAMYAN would direct and pay a third

15    party to remove scheme records from a storage location.

16          ix. Defendant ABRAHAMYAN would attempt to dissuade a

17    witness from speaking with law enforcement.

18    C.    OVERT ACTS

19         10.  In furtherance of the conspiracy, and to accomplish its

20    objects, defendants ABRAHAMYAN and OGANESIAN, together with others

21    known and unknown to the Grand Jury, on or about the dates set forth

22    below, committed and caused to be committed various overt acts, in

23    the Central District of California, and elsewhere, including, but not

24    limited to, the following:

25         Overt Act No. 1:  On or about October 13, 2009, defendant

26    ABRAHAMYAN quit-claim transferred ownership of the Lakeview property

27    to a nominee as a purported "gift."

28         Overt Act No. 2:  On or about March 10, 2010, that nominee quit-

1 claim transferred ownership of the Lakeview property back to

2 defendant ABRAHAMYAN.

3      Overt Act No. 3:  On or about March 10, 2010, defendant

4 ABRAHAMYAN entered a sales agreement with defendant OGANESIAN to sell

5 the Lakeview property to defendant OGANESIAN for $765,000, which was

6 later lowered to $650,000.

7      Overt Act No. 4:   On or about September 22, 2010, in order

8 induce Chase Bank to approve a short sale of the Lakeview property

9 because the sales price was approximately $390,000 less than

10 defendant ABRAHAMYAN owed in mortgage principal to Chase Bank,

11 defendants ABRAHAMYAN and OGANESIAN signed a Chase Bank form entitled

12 "Affidavit of Arm's Length Transaction," which contained false

13 statements.

14      Overt Act No. 5:  On or about October 6, 2010, defendant

15 OGANESIAN transferred approximately $277,500 from a bank account

16 containing tax, wire, and bank fraud proceeds to escrow for defendant

17 OGANESIAN's purchase of the Lakeview property from defendant

18 ABRAHAMYAN.

19      Overt Act No. 6:  On or about October 7, 2010, a schemer working

20 together with defendants ABRAHAMYAN and OGANESIAN transferred

21 approximately $362,000 from a bank account containing tax, wire, and

22 bank fraud proceeds to escrow for defendant OGANESIAN's purchase of

23 the Lakeview property from defendant ABRAHAMYAN.

24      Overt Act No. 7:  On or about October 12, 2010, defendant

25 ABRAHAMYAN sold, and transferred ownership of, the Lakeview property

26 to defendant OGANESIAN.

27      Overt Act No. 8:  In or around August 2011, to conceal defendant

28 ABRAHAMYAN's role in the scheme, defendant OGANESIAN leased a

Mercedes-Benz vehicle in his name, but which defendant ABRAHAMYAN

would use as his vehicle.

Overt Act No. 9:  On or about November 5, 2011, defendant

OGANESIAN quit-claim transferred ownership of the Lakeview property

to defendant ABRAHAMYAN's mother as a purported "gift."

Overt Act No. 10:  On or about December 3, 2012, defendant

OGANESIAN cashed a $3,740 check jointly payable to him and another

schemer, which consisted of tax, wire, and bank fraud proceeds.

Overt Act No. 11:  On or about July 2, 2013, to conceal

defendant ABRAHAMYAN's role in the scheme, defendant OGANESIAN paid

the monthly lease payment for the Mercedes-Benz vehicle that he had

leased for defendant ABRAHAMYAN, from a bank account containing tax,

wire, and bank fraud proceeds.

Overt Act No. 12:  On or about January 3, 2014, defendant

OGANESIAN purchased a $14,400 cashier's check from his bank account,

which was then deposited into a different bank account held in a

nominee's name, which then issued a $14,400 cashier's check used to

purchase another property.

Overt Act No. 13:  On or about June 18, 2014, a $21,941.57 check

consisting of tax, wire, and bank fraud proceeds, which was jointly

payable to a nominee and defendant ABRAHAMYAN's father, was deposited

into defendant ABRAHAMYAN's father's bank account, which was then

used for thousands of dollars in personal expenditures by defendant

ABRAHAMYAN, including Mercedes Benz lease payments and private school

tuition for defendant ABRAHAMYAN's child.

Overt Act No. 14:  On or about June 24, 2014, a $16,371 check

consisting of tax, wire, and bank fraud proceeds, which was jointly

payable to a nominee and defendant ABRAHAMYAN's father, was deposited

into defendant ABRAHAMYAN's father's bank account, who had listed the Lakeview property as his address when opening that bank account.

Overt Act No. 15:  On or about February 23, 2015, defendant ABRAHAMYAN used a nominee to purchase a property in North Hollywood, California ("Van Noord"), for approximately $393,000, using approximately $390,000 from a bank account containing tax, wire, and bank fraud proceeds.

Overt Act No. 16:  On or about April 28 and 30, 2015, defendant ABRAHAMYAN's then-girlfriend transferred more than $100,000 from a bank account containing tax, wire, and bank fraud proceeds to a nominee to use to purchase a property in Van Nuys, California.

Overt Act No. 17:  On or about September 30, 2015, the nominee sold the Van Noord property for approximately $595,000.

Overt Act No. 18:  On or about October 2, 2015, that nominee transferred approximately $270,000 from the proceeds of the sale of the Van Noord property to purchase another property, in Van Nuys, California.

Overt Act No. 19:  On or about October 26, 2015, that nominee purchased the Van Nuys property for approximately $435,000.

Overt Act No. 20:  In or around April 2016, after federal agents executed search and arrest warrants related to the tax, wire, and bank fraud scheme in which defendants ABRAHAMYAN and OGANESIAN were participating, defendant ABRAHAMYAN paid someone to break into a storage location that contained records of that fraudulent scheme and remove those records.

Overt Act No. 21:  In or around April 2016, defendant ABRAHAMYAN fled the United States, after federal agents had executed search and arrest warrants related to the tax, wire, and bank fraud and money

1   laundering scheme in which defendants ABRAHAMYAN and OGANESIAN were

2   participating.

3        Overt Act No. 22:  On or about June 21, 2018, defendant

4   ABRAHAMYAN's mother lied to federal agents about the Lakeview

5   property.

6        Overt Act No. 23:  On or about June 22, 2018, defendant

7   OGANESIAN lied to federal agents about the Lakeview property.

8        Overt Act No. 24:  In or around April 2020, defendant

9   ABRAHAMYAN's mother continued to retain ownership of the Lakeview

10  property.

11                                      A TRUE BILL

12

13                                      /s/
                                        _____
                                        Foreperson

14  NICOLA T. HANNA
    United States Attorney
15

16  *Brandon Fox*

17  BRANDON D. FOX
    Assistant United States Attorney
18  Chief, Criminal Division

19  BENJAMIN R. BARRON
    Assistant United States Attorney
20  Chief, Santa Ana Branch Office

21  DANIEL H. AHN
    Assistant United States Attorney
22  Deputy Chief, Santa Ana Branch Office

23  CHARLES E. PELL
    Assistant United States Attorney
24  Santa Ana Branch Office

25

26

27

28

                                13